UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x

JUDY FLEURY on behalf of her infant son J.F. AND
ZETTA HOSKEY on behalf of her infant son K.P.,

                                                 Plaintiffs,

- against -

CITY OF NEW YORK, POLICE OFFICER PHILIP
FACENDA #14625, SERGEANT MICHAEL MILLER
#2951. SERGEANT ANGELO ROSARIO #4111 AND
JAMES DOE CROSSROADS EMPLOYEES #1-2,

                                                 Defendants.

-------------------------------------------------------------------- x

FIRST AMENDED
COMPLAINT AND
JURY DEMAND

11CV1515 (ARR)(JO)

ECF CASE

Plaintiffs Judy Fleury, on behalf of her infant son, J.F., and Zetta Hoskey, on behalf of her infant son K.P., by their attorneys, Stoll, Glickman & Bellina, LLP, for their complaint allege as follows:

## PRELIMINARY STATEMENT

1. This is a civil rights action in which plaintiffs seek relief through 42 U.S.C. §1983 for the violation of their Fourth and Fourteenth Amendment rights in addition to violations of the laws and Constitution of the State of New York.

2. The claim arises from a March 12, 2010 incident in which Officers of the New York City Police Department ("NYPD"), acting under color of state law, intentionally and willfully subjected plaintiffs to, among other things, false arrest, false imprisonment, and malicious prosecution. This claim also arises from a March 16, 2010 incident when the Department of Juvenile Justice negligently held plaintiffs after their release was ordered by a judge.

3. Plaintiffs seek monetary damages (special, compensatory, and punitive) against

defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4. This action is brought pursuant to 28 U.S.C. §§ 1331, 1343(a)(3)(4), 1367(a) and 42 U.S.C. §1983, the Fourth and Fourteenth Amendments to the United States Constitution. Pendent party jurisdiction and supplementary jurisdiction over plaintiffs' state law claims are asserted.

5. The amount in controversy exceeds $75,000.00 excluding interest and costs.

## VENUE

6. Venue is laid within the Eastern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District.

## PARTIES

7. Plaintiffs Judy Fleury, on behalf her infant son, J.F. who was 14 years old at the time of the incident, and Zetta Hoskey as legal guardian to K.P. who was 14 years old at the time of the incident, all resided at all times here relevant in Kings County, City and State of New York.

8. The City of New York is a municipal corporation organized under the laws of the State of New York. The Department of Juvenile Justice (DJJ), which operates Crossroads Juvenile Center (Crossroads), is an agent of the City.

9. Police Officer Philip Facenda, Sergeant Michael Miller and Sergeant Angelo Rosario were, at all times here relevant, employees of the NYPD, and are sued in their individual capacity.

10. Defendants "James Doe" were employees, at all times here relevant, of the DJJ, and are

sued in their individual capacity relating to the events of March 16, 2010.

11. At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## NOTICE OF CLAIM

12. Within 90 days of the events giving rise to these claims, plaintiffs filed written notices of claim with the New York City Office of the Comptroller. Over 30 days have elapsed since the filing of those notices, and this matter has not been settled or otherwise disposed of.

## FACTUAL ALLEGATIONS

13. On March 16, 2010, J.F. and K.P. were in the vicinity of Atlantic Ave and Ralph Ave. in Brooklyn, NY. At approximately 5PM both plaintiffs, along with several other individuals, were stopped by defendant officers and searched. No illegal contraband or weapons were found. Both plaintiffs complied with the officers demands. The plaintiffs and the other arrestees were detained at the location for more than 30 minutes.

14. Eventually, an individual who claimed to have been assaulted was brought to the location. The victim pointed to one of the individuals being detained, not to either plaintiff, and said "that's the guy there". Nevertheless, plaintiffs were transported to the 81st precinct.

15. Judy Fleury went to the precinct as soon as she heard of her son's arrest. Defendant officer Facenda informed Ms. Fleury that there was a videotape of the incident and that plaintiff would remain at the precinct until he could be transported to the criminal court building for arraignment. Also, at the precinct, both plaintiffs were repeatedly questioned by the officers and repeatedly denied their guilt.

16. Both plaintiffs were taken before a judge in Brooklyn Criminal Court on Saturday

night, approximately 27 hours after the initial arrest. Based on the complaint sworn to by Officer Facenda, bail was set for each plaintiff. They were then transported back to the precinct to await transfer to Crossroads.

17. The following day, Sunday March 14, plaintiffs were still being held in the 81st precinct. At approximately 12PM, the defendant officer told plaintiffs that he had watched the videotape of the incident and it was clear that neither plaintiff had anything to do with the crime. The officer further explained that because bail had been set, there was nothing he could about it. At approximately 4PM, plaintiffs were taken to Crossroads.

18. On March 16, 2010, two days prior to the original scheduled court appearance, the District Attorney's Office advanced plaintiffs' cases, stated that there would be no grand jury action and consented to plaintiffs' release. The Honorable Judge Mondo ordered plaintiffs immediate release. At the time the judge ordered their release, both plaintiffs were still being held at Crossroads.

19. Neither plaintiff was released. Instead, on March 18, the originally scheduled court date, both plaintiffs were brought to the courthouse where they sat, in the holding pens, for eight hours. Without seeing a judge or learning what was happening they were both taken back to Crossroads at the end of the day.

20. That same day, plaintiffs' mothers sat in court anxious for news of their sons cases. Late in the day, a court officer finally explained that the plaintiffs were supposed to have been released two days prior. The mothers were told that Crossroads would be notified again and they could pick up their sons that night. Both plaintiffs were released to their mothers at approximately 9PM March 18, 2010.

21. The case was still not over. Both plaintiffs appeared in court two additional times over

a 6 month period before all the charges were dismissed and sealed.

22. At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate plaintiffs' rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of their fellow officers against plaintiffs.

23. During all of the events above described, defendants acted maliciously and with intent to injure plaintiffs.

## DAMAGES

24. As a direct and proximate result of the acts of defendants, plaintiffs suffered the following injuries and damages:

    a. Violation of their rights pursuant to the Fourth Amendment of the United States Constitution to be free from an unreasonable search and seizure of their persons;

    b. Violation of their rights pursuant to the Fourteenth Amendment of the United States Constitution to due process;

    c. Violation of their New York State Constitutional rights under Article 1, Section 12 to be free from an unreasonable search and seizure;

    d. Violation of their New York State Constitutional rights under Article 1, Section 6 to due process;

    e. Physical pain and suffering;

    f. Emotional trauma and suffering, including fear, embarrassment, humiliation, harassment, emotional distress, frustration, extreme inconvenience, anxiety;

    g. Loss of liberty.

## FIRST CAUSE OF ACTION
42 USC § 1983 (Against Individual Defendants)

25. The above paragraphs are here incorporated by reference.

26. The officer defendants wrongfully and illegally arrested, detained, imprisoned and prosecuted plaintiffs.

27. The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, continued imprisonment and prosecution of plaintiffs was carried out without a valid warrant for their arrest, without plaintiffs' consent, and without probable cause or reasonable suspicion.

28. At all relevant times, defendants acted forcibly in apprehending, arresting, and imprisoning plaintiffs.

29. Throughout this period, plaintiffs were unlawfully, wrongfully, and unjustifiably held under arrest, deprived of their liberty, imprisoned and falsely charged.

30. At all times, the unlawful, wrongful, and false arrest and imprisonment of plaintiffs were without basis and without probable cause or reasonable suspicion.

31. All of this occurred without any illegal conduct by plaintiffs.

32. The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiffs of their constitutional rights secured by the United States Constitution.

33. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

34. Defendants James Does, employees of the DJJ Crossroads Facility, deprived plaintiffs

6

of their rights to be free from unreasonable seizure, to be free from cruel and unusual punishment, and to due process of law, pursuant to the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, by failing to release them on their court ordered release date despite having actual notice. Defendants intended to confine plaintiff, plaintiff was conscious of the confinement and did not consent to it, and the confinement was not otherwise privileged.

**SECOND CAUSE OF ACTION**
False Arrest and False Imprisonment
(Against Officer Defendants)

35. The above paragraphs are here incorporated by reference.

36. Defendants subjected plaintiffs to false arrest, false imprisonment, and deprivation of liberty without probable cause.

37. Defendants intended to confine plaintiffs, plaintiffs were conscious of their confinement and did not consent to their confinement.

38. All of this occurred without any illegal conduct by plaintiffs.

39. Defendants, their officers, agents, servants and employees, were responsible for plaintiffs' arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

40. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiffs sustained the damages described above.

**THIRD CAUSE OF ACTION**
Malicious Prosecution

41. The preceding paragraphs are here incorporated by reference.

42. Defendants, acting with malice, initiated a prosecution against plaintiffs and caused

7

them to be prosecuted.

43. The criminal proceedings were terminated in plaintiffs' favor.

44. Defendants have deprived plaintiffs of their civil, constitutional and statutory rights and have conspired to deprive him of such rights and are liable to plaintiff under New York State common law and the New York State Constitution.

45. As a result of the malicious prosecution implemented by defendants, plaintiffs were damaged.

### FOURTH CAUSE OF ACTION
False Imprisonment
(Against DJJ Employees)

46. All above paragraphs are here incorporated by reference.

47. On and after March 16, 2010, plaintiffs' confinement was unlawful and in no way privileged.

48. Plaintiffs were conscious of their confinement and did not consent to the confinement.

49. Plaintiffs were damaged by the false imprisonment.

### FIFTH CAUSE OF ACTION
Negligence
(Against All DJJ Employees)

50. The above paragraphs are here incorporated by reference.

51. Defendants knew or reasonably should have known that plaintiffs had been ordered released by the Kings County Criminal Court. Nevertheless, defendants continued to unreasonably and negligently detain plaintiffs.

52. Defendants owed plaintiffs a duty of care to protect them from being kept in custody when they should have been released. Defendants breached that duty of care when they failed to release them after a court order to do so.

53. Defendants, their officers, agents, servants and employees, were responsible for plaintiffs detention and imprisonment during this period of time. Defendant City, as employer of defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior.*

54. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiffs sustained the damages described above.

**SIXTH CAUSE OF ACTION**
MUNICIPAL AND SUPERVISORY LIABILITY
(Against Defendant City)

55. The above paragraphs are here incorporated by reference.

56. The City is liable for the damages suffered by plaintiffs in that, after learning of their employees' violation of plaintiffs' constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event.

57. The City has been alerted to the regular use of false arrests by its police officers, through lawsuits, civilian complaints, notices of claim, City Council hearings, newspaper reports, and cases resulting in declined prosecutions and dismissals, but has nevertheless exhibited deliberate indifference to such false arrests; that deliberate indifference caused the violation of plaintiffs' constitutional rights in this case.

58. The aforesaid event was not an isolated incident. The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and

testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

59. The Civilian Complaint Review Board ("the CCRB"), a City police oversight agency, often finds complainants lack credibility based in part on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to the CCRB. In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB. The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

60. The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct.[1] The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer, which the police commissioner has done on many occasions. This entire procedure provide so many opportunities for meritorious complaints of false arrests to be dismissed or disregarded that there is no credible, effective oversight of police department employees, despite an apparantly

---

[1] The NYCLU issued a report in September 2007 on the CCRB detailing the failure of the NYPD to follow up on substantiated CCRB complaints, among other failures by the City and the CCRB to address police misconduct: "Mission Failure: Civilian Review of Policing in New York City, 1994-2006"

elaborate set of oversight mechanisms.

61. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected. Even occasional judicial findings that officers have testified incredibly are not reported routinely to the police department or any oversight agencies.

62. Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated its law department from the discipline of police officers, so that civil suits against police officers for actions taken in their capacity as police officers have no impact on the officers' careers, regardless of the outcome of the civil actions. Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers. This "total disconnect" causes a system where the City pays vast sums to settle false arrests, but does nothing to address the underlying causes of such false arrests.

63. All of the aforementioned has created a climate where police officers and detectives make lie to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiffs' civil rights, without fear of reprisal.

64. Plaintiffs have been damaged as a result of the deliberate indifference of the Defendant City.

WHEREFORE, plaintiffs demand judgment against the defendants, jointly and severally, as follows:

A. In favor of plaintiffs in an amount to be determined by a jury for each of plaintiffs' causes of action;

B. Awarding plaintiffs punitive damages in an amount to be determined by a jury;

C. Awarding plaintiffs reasonable attorneys' fees, costs and disbursements of this action; and

D. Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.

DATED: September 21, 2011
Brooklyn, New York

Respectfully yours,

_/s/ Nicole Bellina_

By: Nicole Bellina
Stoll, Glickman & Bellina, LLP
Attorneys for Plaintiffs
475 Atlantic Ave. Fl.3
Brooklyn, NY 11217
(718) 852-3710

TO:

City of New York
Officer Facenda
100 Church Street
New York, NY 10007

Sgt. Michael Miller #2951
81st Precinct
30 Ralph Ave.
Brooklyn, NY 11221

Sergeant Angelo Rosario # 4111
World Trade Center Command
1 Police Plz.
New York, NY 10038